307 Ga. 757
FINAL COPY

S19A1492.  RICH v. THE STATE.

Boggs, Justice.

In 2016, Deonta Rashad Rich was convicted of murdering Sylvester Downs and kidnapping Taquoya Rogers. Rich now challenges the sufficiency of the evidence to support his convictions, argues that the trial court erred by denying his motion for new trial while sitting as the thirteenth juror, and contends that his trial counsel was ineffective for failing to object after the State, during its closing argument, inappropriately commented on his prior juvenile adjudication. We affirm.[1]

---

[1] Sylvester Downs was killed on March 23, 2014. On November 18, 2014, a Tift County grand jury indicted Rich, along with co-defendants Justin Dixon and Conswilla Mayo, for felony murder (Count 1) predicated on armed robbery (Count 2), six other counts of armed robbery (Counts 3-8), and three counts of kidnapping (Counts 9-11). At trial from September 20 to 22, 2016, the trial court granted Rich's motion for directed verdict as to Counts 5-9 and 11. The jury found Rich guilty of Counts 1, 2, 4, and 10, and not guilty of Count 3. The trial court sentenced him to life in prison without the possibility of parole for felony murder (Count 1), and 20 years' imprisonment for kidnapping (Count 10), set to run concurrently with the sentence on Count 1. Moreover, even though the trial court merged Counts 2 and 4 into Count 1, we need not address

Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following: On the evening of March 23, 2014, a large group of family and friends gathered at the home of Sylvester and Catherine Downs to play cards; the Downses' home was known in the community as a gambling house. Present at the Downses' home that evening were the Downses, Conswilla Mayo, Taquoya Rogers, six other adults, and a few young children.

Mayo, who knew Rich and frequented the Downses' card games, left the residence on two occasions that evening under the pretext of running errands. During her first absence, Rich and his friend Justin Dixon approached her while she was sitting in her car outside of her apartment complex. Mayo advised Rich that she was attending a card game at the Downses' home, and that if Rich and Dixon wanted, they could make an "easy lick" by robbing the patrons

the propriety of those rulings because the State has not challenged them on appeal. See *Dixon v. State*, 302 Ga. 691, 697-698 (4) (808 SE2d 696) (2017). On October 4, 2016, Rich filed a motion for new trial. After an evidentiary hearing, the trial court denied the motion on February 14, 2019. Rich filed a timely notice of appeal, and the case was docketed in this Court for the August 2019 term and submitted for decision on the briefs.

of their winnings from the card game. Rich and Dixon then parted ways with Mayo, and Mayo returned to the Downses' home.

Rich and Dixon then went to Rich's home to prepare to rob the people at the Downses' card game. According to Dixon, both of them donned dark clothing; Rich grabbed gloves and a mask that had a skull on the front, while Dixon had on a Dallas Cowboys hooded sweatshirt. Rich also took his black and silver .40 caliber handgun. At this point, Rich began using Dixon's cell phone to communicate with both Mayo and Rich's then-girlfriend, Jermita Green.

Rich then texted Mayo that he was on the way, and he and Dixon subsequently met Mayo, who had just left the Downses' residence for the second time. Rich and Dixon got in Mayo's car, and the three proceeded to the Downses' home. Rich and Dixon exited the car when it was in front of the Downses' home and then found a hiding spot outside. Mayo parked her car and went back inside the residence.

Phone records showed that while Rich and Dixon were lying in wait outside the home, Mayo texted, "one at [the] front, one at [the]

back." Rich put on his skull mask and knocked on the front door of the Downses' home, while Dixon remained outside near the home's back door. Rich — armed with a handgun — forced his way past the person who answered the door and walked into the back room where the Downses held their card games.

When Rich entered the room, there was cash on the card table. Rich pointed his handgun at the patrons, ordered them to lie on the ground, and demanded that they hand over all of their money. Rogers testified that Rich saw her running back and forth in the hallway that led to the card room, pointed his gun at her, grabbed her by the neck, and pushed her onto the floor in the card room. Another patron testified that Rich forced Rogers to open the back door in the card room. The patrons then threw their money on the table and the floor. Some of the patrons attempted to flee out the back door, but Dixon was there to stop them. Dixon then came inside the card room, and, at Rich's direction, started to place the patrons' cash into a bag.

Suddenly, Sylvester Downs entered the back room from the

hallway and aimed his .30/30 lever-action rifle at Rich's back. Rich turned and fired at Mr. Downs once, striking him in the left shoulder. The bullet traveled through Mr. Downs' chest and pierced his aorta, killing him. Rich then directed Dixon to grab Mr. Downs' rifle, and Rich and Dixon fled through the front door. Mayo ran out the back door, jumped in her car, and took off.

A few streets away, Mayo spotted Rich and Dixon and picked them up. Coincidentally, two police officers patrolling the area saw Mayo — whom they knew from previous contacts — stop her car to pick up two males. Those officers turned around to investigate, but by the time they returned, Mayo's car was gone. Mayo then dropped Rich and Dixon off at a local convenience store. Rich gave Dixon his split of the take (approximately $45), and the two parted ways.

1. Rich argues that the evidence presented at trial was legally insufficient to support his convictions for felony murder and kidnapping.[2]

---

[2] Rich also argues that the evidence did not support the armed robbery guilty verdicts, but those challenges are moot because the trial court merged

(a)    As to his conviction for felony murder, Rich contends that the testimony at trial was confusing regarding the identity of the shooter. Therefore, he argues that any rational trier of fact would have required physical evidence showing his guilt, and no such evidence was presented at trial, so the evidence was insufficient. We disagree.

When evaluating a challenge to the sufficiency of the evidence, this Court views all of the evidence admitted at trial in the light most favorable to the verdicts and asks whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). Moreover, "[o]ur limited review leaves to the jury the resolution of conflicts in the evidence, the weight of the evidence, the credibility of witnesses, and reasonable inferences to be made from basic facts to ultimate facts." *McGruder v. State*, 303 Ga. 588, 590

those guilty verdicts into the felony murder conviction. See *Collett v. State*, 305 Ga. 853, 855 (1) n.2 (828 SE2d 362) (2019).

6

(II) (814 SE2d 293) (2018) (citations and punctuation omitted).

We conclude that the evidence presented at trial was sufficient to enable a rational trier of fact to conclude — as this jury did — that Rich was guilty beyond a reasonable doubt of felony murder for killing Sylvester Downs in the commission of the offense of armed robbery. First, "[a]lthough the State is required to prove its case with competent evidence, there is no requirement that it prove its case with any particular sort of evidence." *Plez v. State*, 300 Ga. 505, 506 (1) (796 SE2d 704) (2017). See also *Johnson v. State*, 296 Ga. 504, 505 (1) (769 SE2d 87) (2015) (noting that the State was not required to produce physical evidence because "the testimony of a single witness is generally sufficient to establish a fact") (citation and punctuation omitted). Second, Dixon and Mayo both testified that they were part of the card game robbery scheme with Rich, and that Rich was the masked man who entered the Downses' home with a handgun, forced patrons to turn over their cash at gunpoint, and shot Sylvester Downs to death when he attempted to thwart the robbery. Third, because the jury was charged on parties to a crime,

the jury did not need to know whether Rich was the shooter in order to find him guilty of being a party to Sylvester Downs' murder. See OCGA § 16-2-20. Finally, to the extent that Rich contends that Dixon and Mayo were not credible because they testified under immunity, it was the jury's province to determine the credibility of witnesses. See *Handley v. State*, 289 Ga. 786, 787 (1) (716 SE2d 176) (2011) ("[T]he evidence was not insufficient simply because one eyewitness testified pursuant to a grant of immunity . . . ."). Accordingly, we affirm Rich's conviction for felony murder.

(b)   As to Rich's conviction for kidnapping Rogers, he contends that the State failed to prove the asportation element, because, to the extent that he did force Rogers to move, such movement did not help him accomplish an armed robbery and was merely incidental to that distinct offense. We disagree.

"A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will." OCGA § 16-5-40 (a). Regarding the asportation element, "slight movement

shall be sufficient; provided, however that any such slight movement of another person which occurs while in the commission of any other offense shall not constitute the offense of kidnapping if such movement is merely incidental to such other offense." OCGA § 16-5-40 (b) (1). But "[m]ovement shall not be considered merely incidental to another offense if it: (A) [c]onceals or isolates the victim; (B) [m]akes the commission of the other offense substantially easier; (C) [l]essens the risk of detection; or (D) [i]s for the purpose of avoiding apprehension." OCGA § 16-5-40 (b) (2) (A)-(D).

We conclude that the evidence was sufficient to authorize a rational jury to conclude that Rich committed the offense of kidnapping. The evidence presented showed that while the robbery was in progress, Rogers was running around in the hallway that led to the card room. When Rich saw her, he forced her into the card room at gunpoint, made her open the back door, and pushed her down to the floor. That forced movement was not "merely incidental" to Rich's commission of armed robbery, because Rich's act of forcing Rogers to enter the card room and open the back door allowed Dixon

9

to enter and help Rich complete the robbery by gathering cash while Rich held the patrons at gunpoint. See OCGA § 16-5-40 (b) (2) (B). And that forced movement also prevented Rogers from calling 911 or running to a neighbor's house for help, which mitigated the risk that Rich would be detected and apprehended by law enforcement. See OCGA § 16-5-40 (b) (2) (C). Therefore, the evidence was sufficient to support Rich's conviction for kidnapping.

2.    Next, Rich argues that the trial court erred in its capacity as the "thirteenth juror" by denying him a new trial under OCGA § 5-5-21.[3] He contends that the jury's guilty verdicts for felony murder and kidnapping were decidedly and strongly against the weight of the evidence presented at trial, because no physical evidence tied him to the crimes, and neither Mayo nor Dixon were credible witnesses because they testified under immunity and their

---

[3] OCGA § 5-5-21 says:
    The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding.

pretrial statements were inconsistent with their trial testimony.

However, whether to grant a new trial under OCGA § 5-5-21 is committed *solely* to the discretion of the trial court, and when an appellant asks this Court to review a trial court's denial of a new trial on this ground, we review the case under the standard set forth in *Jackson v. Virginia,* supra. See *Dent v. State*, 303 Ga. 110, 114 (2) (810 SE2d 527) (2018). And as explained above, the evidence presented at trial was sufficient to authorize a rational jury to find Rich guilty beyond a reasonable doubt of the crimes of which he was convicted. Accordingly, this enumeration of error lacks merit.

3.  Finally, Rich argues that his trial counsel was constitutionally ineffective for failing to object to the State's improper mention, during its closing argument, of his 2010 juvenile adjudication, which the trial court admitted into evidence under OCGA § 24-4-404 (b) ("Rule 404 (b)"). We disagree.

To prevail on his ineffective assistance claim, Rich must demonstrate both that counsel's performance was professionally deficient in failing to make the objections and that there is a

reasonable probability that the verdict would have been more favorable to him if they had been made. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (A), 694 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984). To satisfy the deficiency prong, Rich must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in light of the prevailing professional norms. See *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013).

Prior to trial, the State successfully moved to offer evidence at trial of Rich's 2010 juvenile adjudication for the offenses of aggravated assault, aggravated assault with intent to rob, and criminal attempt to commit robbery. At trial, the victim of those offenses, Charlie Jackson, testified that in 2008, two masked men entered his home and demanded money, and when he reached into his back pocket, one of the men shot him with a rifle. At the State's request, Jackson pointed to the location of his gunshot wound and described the "big scar" he had on his stomach from a surgery. The trial court issued a limiting instruction contemporaneous with

Jackson's testimony, informing the jury that this evidence had been admitted for the sole purpose of proving the intent and identity of the perpetrator, that Rich was only being tried for the crimes alleged in the indictment, and that the jury could not infer from that evidence that Rich had the character to commit the instant offenses. The trial court also issued a similar instruction when charging the jury after the close of evidence.

During its closing arguments, the State said:

> None of that changes anything. . . . It won't bring Mr. Downs back. *It won't take the scars off of Charlie Jackson.* It won't help Ms. Downs's mental health. . . . Your verdict will protect those in the future. We ask that you do what the evidence demands, and that is to find this defendant guilty. Thank you.

Rich's trial counsel did not object to that argument.

In his motion for new trial, Rich argued among other things that his counsel was ineffective for failing to object to the State's improper mention of his prior juvenile adjudication during its closing argument. Rich's trial counsel, however, did not testify at the hearing on the motion for new trial. The trial court denied the

motion.

We have said that where an appellant's trial counsel does not testify at the hearing on a motion for new trial, it is extremely difficult to overcome the presumption that counsel's conduct resulted from reasonable trial strategy. See *Maxwell v. State*, 290 Ga. 574, 575 (2) (722 SE2d 763) (2012). The question of whether trial counsel was professionally deficient turns on whether Rich has shown that no competent attorney would have failed to object to the State's mentioning his prior juvenile adjudication during its closing arguments. See *Brown v. State*, 288 Ga. 902, 908 (5) (708 SE2d 294) (2011). We conclude that he has not carried that burden.

"A decision by trial counsel not to object to a portion of a closing argument may indeed fall within the ambit of trial strategy." *Holmes v. State*, 273 Ga. 644, 648 (5) (c) (543 SE2d 688) (2001) (citation omitted). In some cases, "an objection may simply . . . highlight[ ] the point being made by the prosecution," and thus an attorney's decision not to object may be a valid exercise of his or her professional judgment. Id. (citation and punctuation omitted). Here,

14

we cannot say that trial counsel's failure to object to the passing reference in the State's closing argument was objectively unreasonable. Under these circumstances, Rich has failed to show that trial counsel was constitutionally deficient for failing to object to the State's characterization of the Rule 404 (b) evidence. Given this conclusion, we need not address whether Rich can show prejudice. See *Strickland*, 466 U. S. at 700 (V). Accordingly, we affirm Rich's convictions.

*Judgment affirmed.  All the Justice concur.*

DECIDED JANUARY 27, 2020.
Murder. Tift Superior Court. Before Judge Cross.
*Nicholas E. White*, for appellant.

*C. Paul Bowden, District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General*, for appellee.