FINAL COPY
309 Ga. 612

S20A0865. KIM v. THE STATE.

MELTON, Chief Justice.

Following a bench trial, Appellant Ki Song Kim appeals his convictions for murder and other offenses in connection with the stabbing deaths of Young Chan Choi ("Mr. Choi") and Sun Hee Choi ("Mrs. Choi").[1] In his sole enumeration of error, Kim claims that the

---

[1] The crimes occurred on July 27, 2013. On October 23, 2013, a Gwinnett County grand jury indicted Kim for the following crimes: malice murder of Mr. Choi by stabbing him in the heart (Count 1), malice murder of Mrs. Choi by cutting her throat (Count 2), felony murder of Mr. Choi predicated on aggravated assault with an edged weapon (Count 3), felony murder of Mrs. Choi predicated on aggravated assault with an edged weapon (Count 4), aggravated assault of Mr. Choi for stabbing him in the heart with an edged weapon (Count 5), aggravated assault of Mrs. Choi for cutting her throat with an edged weapon (Count 6), aggravated assault of Mr. Choi for beating him with a rod-like instrument (Count 7), aggravated assault of Mrs. Choi for beating her with a rod-like instrument (Count 8), aggravated battery of Mr. Choi for rendering his lungs useless by stabbing (Count 9), aggravated battery of Mrs. Choi for rendering her lungs useless by stabbing (Count 10), and two counts of possession of a knife during the commission of a felony (Counts 11 and 12).

The State initially filed a notice of intent to seek the death penalty, which the State later agreed to withdraw in exchange for Kim's waiver of a jury trial and stipulation to certain evidentiary matters. At the conclusion of the three-day bench trial from January 23 to January 25, 2019, the trial court found Kim guilty of all counts. The trial court sentenced Kim to life without the possibility

evidence presented at trial was insufficient to support his convictions. For the reasons set forth below, we conclude that the evidence was sufficient to sustain Kim's convictions. However, we also conclude that we must vacate Kim's sentences as to Counts 9 and 10 of his indictment in order to correct sentencing errors that harm Kim.

1. Kim contends that the evidence presented at trial was insufficient to sustain his convictions because the evidence of his guilt was entirely circumstantial and did not rule out the reasonable hypothesis consistent with his innocence that he put forth at trial. We disagree.

It is well settled that, when evaluating the sufficiency of

---

of parole on each of the malice murder counts. The felony murder counts were vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993). Counts 5 and 6 merged with the malice murder counts for sentencing purposes. The trial court also imposed consecutive 20-year sentences for each of Counts 7, 8, 9, and 10, as well as two consecutive five-year sentences for Counts 11 and 12.

Kim filed a motion for new trial on February 23, 2018, which he amended on June 19, 2019. Following a hearing, the trial court denied the motion as amended on September 13, 2019. Kim timely filed a notice of appeal on October 1, 2019, and the case was docketed to the April 2020 term of this Court and submitted for a decision on the briefs.

evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the [factfinder's] assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013).

Viewing the evidence in the light most favorable to the verdicts, the evidence presented at trial showed that, several years before the crimes, Kim had worked for the Chois' restaurant supply business as a salesman. A couple of weeks before their deaths, the Chois re-hired Kim as a salesman and loaned him $6,000 to purchase a car and pay some bills.

On the night of July 27, 2013, the Chois' next-door neighbor saw a car back into the Chois' driveway. Two men got out of the

vehicle and approached the Chois' front door.  The older of the two was wearing a baseball cap and carrying a box of apples.  The neighbor saw Mrs. Choi answer the door and invite the men inside.  A short while later, the neighbor heard "squealing" that she initially thought was an animal, but realized might be her neighbors.  From her driveway and through the Chois' partially open blinds, the neighbor could see a shadow making striking motions.  The neighbor attempted to call Mrs. Choi by phone, but she did not answer.  The neighbor, who did not speak English, called her sister and brother-in-law for help.  When they arrived, her brother-in-law looked through the Chois' window and saw Mr. Choi lying in a pool of blood.  The brother-in-law called 911 at 9:48 p.m.  The neighbor estimated that 15 to 20 minutes elapsed between the time she saw the shadow through the blinds and her brother-in-law calling 911.

When the police arrived, they found the Chois dead inside their home.  Mr. Choi was lying in the foyer with his head blocking the door to the basement.  He had suffered 16 stab wounds from a knife that was at least seven-and-a-half inches long, and had multiple

contusions from a baton-like object on his head, back, abdomen, and side.  The medical examiner determined that three of the stab wounds punctured Mr. Choi's heart, causing his death, and that the blunt force trauma to his head and torso had also contributed to his death.

Mrs. Choi was discovered on the kitchen floor.  She had multiple stab wounds on her back and shoulder from a knife that was at least three inches long, her throat had been cut, and she also had blunt force injuries to her head, rib fractures on both sides of her body, and bruising on her hands and arms.  The medical examiner determined that Mrs. Choi's death was caused by the knife wound to her throat.

Officers found a box of apples on the dining room table and a bloody fingerprint, later identified as belonging to Kim, on the tassel of the blinds in the dining room.  The first and second floor of the home were methodically searched, and, despite the large volume of blood present in the areas where the Chois were found, no blood was found on the second floor.  The basement appeared undisturbed, and

the Chois' son later found $100,000 in cash hidden underneath a coffee table in the basement.

Knowing that it was common for the perpetrator of a stabbing to injure himself, the lead detective notified local hospitals to look out for people seeking treatment for knife injuries. The following morning, officers received a call from personnel at Gwinnett Medical Center that Kim had arrived with substantial knife wounds to his fingers and hand. Surveillance video showed Kim and a younger male in the waiting room of the medical center. The police arrived and interviewed Kim, who reported that he had been robbed the previous evening in the parking lot of a shopping center and cut his hand while attempting to get the knife away from his assailant. Kim said that he did not call the police because the robbery was only for $100 and he did not want any problems. The police took photographs of Kim at the hospital. While those photographs showed a deep wound across the fingers on the inside of Kim's right hand, they did not depict any other visible injuries to Kim's head, face, arms, or legs.

Meanwhile, based upon the unique sticker located on the box of apples, the lead detective traced the apples back to Assi Farmer's Market. Surveillance video obtained from the market showed Kim wearing a baseball cap and purchasing the box of apples at 7:46 p.m. on the night of the murders. Cell phone records showed that Kim's phone was near the Chois' house on the night of the murders around the same time that neighbors called 911.

After officers arrested Kim and searched his vehicle, they found blood on the foot pedals, turn signal knob, gearshift, steering wheel, and driver's side door panel. Blood was also found on the driver's side and passenger's side exterior door handles, as well as the floorboard on the front passenger's side. A test of the blood found on the turn signal showed two DNA profiles: Kim's and Mr. Choi's. The receipt for a box of apples was also found in Kim's vehicle. Police searched Kim's apartment and found bloody clothing and the baseball cap that Kim had been wearing in the Assi market surveillance video.

At trial, Kim admitted being present at the Chois' home when

they were murdered, but blamed their death on "Sam," an acquaintance whom Kim drove to the Chois' home to discuss his possible employment at their restaurant supply business. Kim testified that the men brought the box of apples as a gift for the Chois, which he explained was a common practice in Korean culture; after being in the home for a short time, Kim claimed that Sam attacked the Chois with a knife and baton-like object. Kim testified that he believed some of Mr. Chois' blood got on him during the attack, that his finger print got onto the tassel after he tried to open the blinds to shout for help, and that he got the wound on his hand defending himself from Sam's knife attack. Kim testified that he eventually ran from the house and jumped into the car, after which Sam appeared and jumped into the car before Kim could drive off. When Kim arrived home, he called a friend and asked him to bring clothes and a towel. The next morning, that friend accompanied Kim to the hospital to get the wound on his hand treated.

When asked why he did not call the police, Kim testified that he had a "very bad experience" with the police and, as a result, he

did not trust them. He admitted that he repeatedly lied to the police during their investigation until confronted with contradictory evidence, but he attributed those lies to his distrust of the police.

Kim alleges that, because the State's case was based solely on circumstantial evidence, and because he presented a "reasonable" hypothesis of his innocence that the State did not discredit, the evidence was insufficient to support his convictions. "In cases like this one where convictions are based on circumstantial evidence, the evidence must be 'consistent with the hypothesis of guilt' and 'exclude every other reasonable hypothesis save that of the guilt of the accused.'" *Collett v. State*, 305 Ga. 853, 855 (1) (828 SE2d 362) (2019) (quoting OCGA § 24-14-6). Whether the evidence excludes every other reasonable hypothesis is a question for the factfinder. See id. at 855 (1). "Not every hypothesis is reasonable, and the evidence does not have to exclude every conceivable inference or hypothesis; it need rule out only those that are reasonable." *Akhimie v. State*, 297 Ga. 801, 804 (1) (777 SE2d 683) (2015). Where a rational factfinder is authorized to find that the evidence ruled out

all other reasonable hypotheses, that finding will not be disturbed on appeal unless the verdict is insupportable as a matter of law.  Id.

Kim claims that the State's evidence did not exclude the reasonable hypothesis of his mere presence at the crime scene.  We disagree.  The record shows that Kim and another man arrived at the Chois' home together and left the scene of the crime together.  The Chois were brutally beaten and stabbed to death with knives of differing lengths.  The main floor and second floor of the home were methodically searched and, despite the large volume of blood found throughout the main floor, and the presence of Mr. Chois' DNA in Kim's car, not a trace of blood was found on the second floor of the Chois' home.  The version of events Kim provided was inconsistent with the timeline provided by the Chois' neighbor, Kim repeatedly lied to the police, and Kim's post-incident injury was inconsistent with the attack he claimed to suffer at "Sam's" hand.  Simply put, Kim's story, in which "Sam" singlehandedly perpetrated the bloody attacks, searched both floors of the home by himself, and finished his search in time to jump into the car as Kim was leaving, is not

consistent with the physical evidence.

Based on the foregoing, the trial court was not required to find that Kim's hypothesis that his unidentified associate "Sam" acted alone in committing the crimes was a reasonable one. See *Black v. State*, 296 Ga. 658, 660 (1) (769 SE2d 898) (2015). Indeed, the trial judge could reasonably infer that Kim lied to the police because he shared a common criminal intent with his associate and that the two acted in concert in committing the crimes. See *Jones v. State*, 292 Ga. 656, 658 (1) (a) (740 SE2d 590) (2013) (criminal intent is a question for the factfinder, and can be inferred from the defendant's conduct before, during, and after the commission of the crimes). Based on the foregoing, the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Kim was guilty of the crimes of which he was convicted. See *Jackson*, 443 U.S. at 319 (III) (B).

2. Although Kim does not raise any issues relating to his sentencing on appeal, because the trial court erred by failing to merge the sentences on his aggravated battery charges into his

malice murder convictions, we will exercise our discretion to correct the merger errors because the errors harm Kim. See *Dixon v. State*, 302 Ga. 691, 697 (4) (808 SE2d 696) (2017).

Count 1 of Kim's indictment charged him with the murder of Mr. Choi by stabbing him in the heart, and Count 9 of the indictment charged Kim with aggravated battery for rendering Mr. Choi's lungs useless by stabbing him. Count 2 charged Kim with the murder of Mrs. Choi by cutting her across the neck, and Count 10 charged him with aggravated battery for rendering Mrs. Choi's lungs useless by stabbing her. Even when an aggravated battery charge requires proof of an injury which the malice murder charge does not (which, in this case, is injuries to the victims' lungs), merger of the two crimes is still required if the only difference is that the aggravated battery involved a less serious injury. See *Ledford v. State*, 289 Ga. 70 (1) (709 SE2d 239) (2011), disapproved on other grounds by *Willis v. State*, 304 Ga. 686 (820 SE2d 640) (2018). See also OCGA § 16-1-6 (2).

Kim's convictions for aggravated battery and malice murder

were based on the same act of attacking the Chois with an edged weapon. No evidence presented at trial established a deliberate interval between the Chois' fatal wounds and the wounds that damaged their lungs.[2] See *Regent v. State*, 299 Ga. 172, 174 (787 SE2d 217) (2016) (holding that, in order for separate convictions to be authorized, "a deliberate interval must exist between the completion of one criminal act and the start of a separate criminal act"). Therefore, Kim's sentences for aggravated battery on Counts 9 and 10 should have merged with the malice murder convictions in Counts 1 and 2. Accordingly, we vacate the sentences imposed for Counts 9 and 10.

*Judgment affirmed in part and vacated in part. All the Justices concur.*

---

[2] In fact, with respect to Mr. Choi, the medical examiner testified that some of the same knife wounds that fatally damaged his heart also resulted in damage to his lungs.

DECIDED AUGUST 24, 2020.

Murder. Gwinnett Superior Court. Before Judge T. Davis.

*Lisa M. Wolff, Emily J. Gilbert*, for appellant.

*Daniel J. Porter, District Attorney, Samuel R. d'Entremont, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Leslie A. Coots, Assistant Attorney General*, for appellee.