310 Ga. 94
FINAL COPY

S20A1128.  COATES v. THE STATE.

McMILLIAN, Justice.

Appellant Horace E. Coates appeals his convictions for malice murder and other crimes in connection with the shooting death of Adrian Brooks and aggravated assault of Senchael Clements.[1] In his sole enumeration of error on appeal, Coates contends that the

[1] The crimes occurred on July 3, 2014. On January 9, 2015, a Newton County grand jury returned an eight-count indictment against Coates and Abdul Williams for malice murder (Count 1); two counts of felony murder predicated on armed robbery and on aggravated assault (Counts 2 and 3); armed robbery (Count 4); aggravated assault of Brooks (Count 5); aggravated assault of Clements (Count 6); and two counts of possession of a firearm during the commission of a felony (Counts 7 and 8). Coates's first jury trial in August 2016 ended in a mistrial. At his second jury trial held from March 13 to 15, 2017, Coates was convicted on all charges. Following a hearing on April 13, 2017, Coates was sentenced to serve life in prison for malice murder, another life sentence for armed robbery to run consecutively, twenty years for aggravated assault of Clements to run concurrently, and five years each for the two possession counts to run consecutively to Count 1 but concurrently to each other and Count 4. The felony murder counts were vacated by operation of law, and the remaining aggravated assault count merged into Count 1. On May 12, 2017, Coates filed a motion for new trial, which he amended through new counsel on May 16, 2018, and which was denied by the trial court on September 24, 2019. On December 16, 2019, the trial court granted Coates an out-of-time appeal. Coates then timely filed a notice of appeal, and the case was docketed to the August 2020 term of this Court and submitted for a decision on the briefs.

evidence was legally insufficient to support his convictions. We affirm for the reasons below.

Viewed in the light most favorable to the jury's verdict, the evidence presented at trial showed that Brooks resided with his girlfriend Ebony Etheridge and her minor son. On the evening of July 3, 2014, Clements, who worked for Brooks doing odd jobs in exchange for marijuana, walked to Brooks's home. On his way over, Clements saw Abdul Williams, Coates, and a third man later identified as "Stunner," driving in a white car around the neighborhood. Clements knew Coates and Williams and had seen them at Brooks's residence on prior occasions. Clements testified that Coates, Williams, and Stunner were at Brooks's residence when he arrived, left when Clements came in, and then quickly returned. When they knocked upon their return, Brooks asked Clements to let them in. Once inside, Coates asked for 45 grams of "loud," which Clements testified he understood as a higher quality, more expensive form of marijuana. Brooks said he did not have that amount but offered a smaller amount. After Coates smelled it, he

2

accused Brooks of again giving him bad marijuana. Brooks responded that he had never sold Coates bad marijuana and put away the proffered drugs.

According to Clements, Coates then said, "give it up" and "you know what time it is." Simultaneously, Coates and Williams drew guns and pointed them at Brooks. Stunner also drew a gun and ordered Clements to the ground while Williams stuffed his pockets with drugs located on the table in front of Brooks. Brooks and Coates began scuffling. Clements heard two gunshots and believed Williams fired a third shot. Coates and Stunner grabbed more drugs before fleeing the scene in a white four-door car with Williams.

Williams testified that he and Coates were close friends.[2] On the day of the crimes, he called Coates for a ride home and was picked up by Coates and two men he knew only as Stunner and "Big Eyes" in a white four-door sedan rented by Stunner. Later, he,

---

[2] Coates and Williams were initially tried together, but their cases were severed days before the second trial started. On the day before that trial, Williams pleaded guilty to conspiracy to commit murder and two counts of aggravated assault.

Coates, and Stunner entered Brooks's home while Big Eyes stayed in the car. Williams testified that after Brooks did not give Coates the requested amount of marijuana, Coates got up as if he was going to leave but instead suddenly pulled a butcher knife from his pocket. Brooks tried to run, but Coates grabbed him. Stunner shot his weapon twice, causing Williams to run for the door. According to Williams, Coates had no firearm, Brooks was unarmed, and Clements was balled up on the ground, unarmed, after the first shot. Williams noted that Coates wore a bulletproof vest that day, which was not typical. Coates, Williams, Stunner, and Big Eyes then fled in the white car. Williams denied having a gun or stealing drugs from Brooks but testified that he saw Brooks's black drawstring bag of drugs in the car between Coates's legs. While in the car, Coates threatened Williams to keep him from talking about the crime and told Williams that he would likely only serve two years in jail because he was not actually involved in the crime.

Etheridge testified that two nights before the shooting, she overheard Brooks and Coates arguing over whether Brooks would

continue to purchase midgrade marijuana exclusively from Coates. On the day before the shooting, Coates and Williams came to her home attempting to get Brooks to come outside, but Brooks refused. Then, on the evening of the crimes, while she and her son were in the bedroom, they heard yelling and two gunshots 15 seconds apart. Shortly thereafter, Etheridge saw a white car speed out of her driveway. When she discovered Brooks had been shot, Brooks told her not to call 911 because he had an outstanding arrest warrant, but Etheridge went to the home of her next-door neighbor to call 911. The neighbor testified that he heard two gunshots and that when he went to see about Brooks, he found Brooks lying on the floor with blood pooled around him, face down and unresponsive but still breathing. Etheridge and Clements hid the remainder of the drugs that had been left in the open and a nonoperational shotgun before the police arrived. Etheridge noticed that drugs from the table and the black drawstring bag that Brooks normally used to store drugs were missing.

After the police arrived at the scene, Clements described a

white four-door sedan and the appearances of the three males involved in the shooting, two of whom he knew as "Big Dreads" and "Little Dreads." Clements also provided an address for where they might be located. Shirley Delamar, a neighbor who was familiar with Coates and Williams, described the two men to police, explained that Coates drove a white car with tinted windows, and provided Williams's phone number. On November 20, 2014, Clements identified Coates from a photo lineup as "Big Dreads," and Delamar identified Coates as the man she knew as "Big Dreads" or "Unc." Delamar testified at trial that she spoke with Williams on the phone on the night of the murder when he called to ask if she had heard anything although Williams did not explicitly bring up the murder.

Investigators found Brooks with $133 in his hand and $834 in his pants pocket. They located a sandwich bag of marijuana in Brooks's driveway, a .45-caliber shell casing on the floor inside the door of the residence, and another .45-caliber shell casing in the living room. Investigators also identified a bullet hole in the front

6

wall of the residence and a bullet that went through the wall and into a wooden post on the front porch. The medical examiner removed bullet fragments from Brooks and concluded that Brooks died from a single gunshot wound to the right flank area of his torso. A GBI firearms examiner testified that the recovered shell casings, bullet in the wooden post, and bullet fragments were fired from the same firearm, a Glock .45 automatic pistol. Under two pseudonyms, Coates fled the country and later returned to Florida, where he was arrested on November 6, 2015, and found with a .45-caliber magazine and rounds.

Coates contends that this evidence was insufficient to support his convictions as a matter of constitutional due process. When evaluating the sufficiency of evidence, this Court views the evidence presented at trial in the light most favorable to the verdict and asks whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). We conclude

that the evidence was sufficient.[3]

Coates contends that he cannot be guilty of malice murder because neither witness to the shooting asserted that Coates was the assailant who shot Brooks and because the State could not provide any evidence that he intended to kill Brooks.

> A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being. The State, of course, must prove malice beyond a reasonable doubt to convict someone of malice murder, as malice incorporates the intent to kill. Express malice is that deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof, while malice is implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart. The malice necessary to establish malice murder may be formed in an instant, as long as it is present at the time of the killing. It is for a jury to determine from all the facts and circumstances whether a killing is intentional and malicious.

---

[3] Coates's claims include a challenge to the evidence to support his convictions for felony murder and aggravated assault of Brooks, but because the aggravated assault count merged into the malice murder conviction, and the felony murder count was vacated by operation of law, Coates was not sentenced on either of those counts. Accordingly, we do not address these claims. See *Welch v. State*, 306 Ga. 470, 473 (1) n.5 (831 SE2d 761) (2019).

*Benton v. State*, 305 Ga. 242, 244 (1) (a) (824 SE2d 322) (2019) (citations and punctuation omitted).

Moreover, under OCGA § 16-2-20 (a), "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." Conviction as a party to a crime requires proof that the defendant "shared a common criminal intent with the direct perpetrators" of the crimes. *Fleming v. State*, 306 Ga. 240, 247 (3) (b) (830 SE2d 129) (2019). A jury may infer a common criminal intent from the defendant's presence, companionship, and conduct with other perpetrators before, during, and after the crimes. See *Powell v. State*, 307 Ga. 96, 99 (1) (834 SE2d 822) (2019).

The evidence shows that Coates came back to Brooks's home after visiting him that day, pulled a gun on Brooks and told Brooks to "give it up" after Brooks refused to sell him drugs, restrained Brooks when Brooks attempted to run for the door, and left Brooks to die after he was shot. It also shows that Coates fled the country immediately after the crimes occurred. See *Rowland v. State*, 306

Ga. 59, 65 (3) n.4 (829 SE2d 81) (2019) (Evidence of "flight, . . . assumption of a false name, and related conduct is admissible as evidence of consciousness of guilt, and thus of guilt itself." (citation and punctuation omitted)). Although the witnesses diverged in their testimonies on whether it was Coates or one of his associates who actually shot Brooks, the evidence was sufficient for the jury to conclude that Coates committed malice murder either as the shooter or as a party to the crime. See, e.g., *Thomas v. State*, 296 Ga. 485, 488 (1) (769 SE2d 82) (2015) (jury was authorized to find beyond a reasonable doubt that appellant was guilty of malice murder as a party to the crime when appellant entered store with intent to commit an armed robbery and exhorted shooter to hurry up).

Similarly, we conclude that the evidence was sufficient for the jury to find that Coates was guilty of aggravated assault against Clements even though Clements claimed that one of the other men with Coates held him at gunpoint while Coates and Brooks fought and Williams stole drugs. OCGA § 16-5-21 (a) (2) does not require that Coates point a deadly weapon directly at Clements to be guilty

10

of aggravated assault against him, "but merely that the defendant use the deadly weapon in such manner as to place another in reasonable apprehension of immediately receiving a violent injury." *Green v. State*, 304 Ga. 385, 388 (1) (a) (818 SE2d 535) (2018) (citation and punctuation omitted). The evidence was sufficient to show that Clements was in reasonable apprehension of immediately receiving a violent injury when Coates pulled a gun on Brooks, and in any event, the jury was also authorized to find Coates guilty of aggravated assault of Clements as a party to the crime. See *Herrington v. State*, 300 Ga. 149, 150 (1) (b) (794 SE2d 145) (2016) ("[A] defendant need not personally possess a weapon or fire a shot to be found guilty as a party to an aggravated assault, if the evidence shows that he intentionally aided or abetted in the commission of the crime." (citation and punctuation omitted)).

Coates also argues that the State failed to prove the armed robbery charge under OCGA § 16-8-41 (a) because no witnesses claimed that Coates, rather than Williams or Stunner, stole from Brooks. However, Clements testified that Coates and Stunner stole

11

drugs from the table before they fled, that Williams stole drugs from the table while Coates and Stunner held Brooks and Clements at gunpoint, and that Coates said "you know what time it is" and told Brooks to "give it up." This testimony is sufficient to sustain Coates's armed robbery conviction both directly and as a party to the crime. See *Boyd v. State*, 306 Ga. 204, 208 (1) (a) (830 SE2d 160) (2019) (affirming conviction for armed robbery where defendant told victims " 'y'all already know what time it is'" and to " 'give it up'"). In addition, Etheridge testified that drugs were missing after Coates, Williams, and Stunner left the scene of the murder, a bag of marijuana was found on the ground where Coates ran between the house and the car, and Williams testified that he saw Brooks's black drawstring bag of drugs in the car between Coates's legs. This additional circumstantial evidence supports Clements's direct testimony. See *McKie v. State*, 306 Ga. 111, 115 (829 SE2d 376) (2019) (Jurors are "entitled to draw reasonable inferences from the evidence based on their own common-sense understanding of the world." (citation and punctuation omitted)). Thus, we conclude that

the evidence was also sufficient to enable the jury to find Coates guilty of armed robbery.

Finally, Coates argues that even in the light most favorable to the jury's verdict, the evidence was insufficient to sustain his convictions because there were only two witnesses who testified about the crimes and their stories conflicted substantially. More specifically, Coates argues that all of the crimes for which he was convicted require the use of a firearm, but only one witness claimed that Coates had a gun, the other witness said that Coates had a butcher knife rather than a gun, and no gun was ever found. Moreover, Coates argues that both witnesses' credibility was questionable. Williams testified for the State after pleading guilty and receiving a lesser sentence, and Clements admitted giving police a false name and false statements, being diagnosed with mental illness characterized by hallucinations, being a convicted felon, using drugs at the time of the shooting, and not being on his medication at trial.

However, our review must leave "to the jury the resolution of

conflicts or consistencies in the evidence, credibility of witnesses, and reasonable inferences to be made from the evidence." *Yarn v. State*, 305 Ga. 421, 423 (2) (826 SE2d 1) (2019); see also *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (citation and punctuation omitted)). Though only Clements testified that Coates had a gun, "the testimony of a single witness is generally sufficient to establish a fact." *Rich v. State*, 307 Ga. 757, 759 (1) (a) (838 SE2d 255) (2020) (citation and punctuation omitted). The jury was entitled to believe that Coates wielded a gun rather than a knife based on the evidence presented at trial; thus, the evidence was sufficient to support Coates's convictions for possession of a firearm during the commission of a felony.

*Judgment affirmed. All the Justices concur, except Warren, J., not participating.*

Decided October 5, 2020.

Murder. Newton Superior Court. Before Judge Johnson.

*Jennifer F. Arndt, Anthony S. Carter*, for appellant.

*Layla H. Zon, District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.