319 Ga. 490
FINAL COPY

S24A0843. GRANT v. THE STATE.

BETHEL, Justice.

After a jury trial in January 2020, Nelaunte Grant ("Grant") was convicted of felony murder in connection with the January 2018 shooting death of Shawntray Grant ("Shawntray").[1] In her sole

---

[1] The record indicates no familial relationship between Nelaunte Grant and Shawntray Grant. Shawntray was killed in the early morning hours of June 15, 2018. In February 2019, a Chatham County grand jury indicted Grant and co-indictees Osha Dunham, Jahonne Manigo, Malik McKenzie, Cordell Richardson, Donnell Richardson, and Jevon Williams, individually and as parties to the crime, in a 108-count indictment for crimes related to Shawntray's death, as well as additional unrelated crimes. In connection with Shawntray's death, Grant was charged with felony murder predicated on armed robbery and armed robbery; Grant was not charged with any involvement in the additional crimes. Grant, Dunham, and Donnell Richardson were tried jointly before a jury from January 7 to January 15, 2020. At trial, the jury found Grant guilty of felony murder and armed robbery. Dunham was found guilty of malice murder and other crimes in connection with Shawntray's death; Dunham's case is not part of this appeal. Richardson was found not guilty on all counts. The trial court sentenced Grant to serve life in prison on the felony murder count, and the armed robbery count merged with the felony murder count for sentencing purposes.

Grant filed a timely motion for new trial, which was later amended through new counsel. Following a hearing, the trial court denied the amended motion on January 23, 2024. Grant then filed a timely notice of appeal, and her case was docketed to the April 2024 term of this Court and submitted for a decision on the briefs.

enumeration of error, Grant contends that the evidence presented at trial was insufficient both as a matter of constitutional due process and under Georgia statutory law to support her conviction for felony murder.[2] Upon reviewing the evidence presented at trial, we conclude that the evidence, though not overwhelming, was sufficient to support Grant's conviction. We therefore affirm.

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. On June 14, 2018, Shawntray invited Erika Street and two others to accompany him for an evening of gambling on a boat that departed from Brunswick. Grant, a friend of Street's who was temporarily staying with Street, was included in the outing, and Shawntray picked the two of them up. Street gave Grant money to play some games because Grant did not have any and "was waiting on some money to come in." While on

---

[2] We consider Grant's argument that the trial evidence was insufficient to prove armed robbery only insofar as it bears on her contention that insufficient evidence supported her conviction for felony murder predicated on armed robbery. Because the armed robbery count merged into the felony murder count for sentencing purposes, any separate challenge to the armed robbery count is moot. See *Morris v. State*, 310 Ga. 443, 443 n.2 (851 SE2d 593) (2020).

the boat, Shawntray won about $10,000, which was paid out mostly in $100 bills. While Shawntray was accumulating these winnings, Grant was sitting at a nearby slot machine but was not playing. While observing Shawntray from her seat, Grant questioned another patron about the approximate value of Shawntray's winnings, which the patron responded was over $10,000.

Because Shawntray had won such a large amount of money, he and the others who had accompanied him, including Grant, were permitted to disembark first with a security escort. Shawntray then dropped off Grant and Street at Street's residence. Upon their arrival at Street's house, Grant asked to borrow Street's car to visit a friend, and Street acquiesced. A short time later, Street received a call informing her that Shawntray had been shot. Street called Grant to return to the house. Upon Grant's return, Grant, Street, Street's mother, and another person all drove to the scene of the shooting where everyone, except Grant, exited the vehicle to see what had happened.

Shawntray's body was found lying next to his vehicle in the

parking lot of his apartment complex. He had suffered multiple gunshot wounds and was pronounced dead at the scene. Police recovered five shell casings and several spent bullets from around Shawntray's body, as well as Shawntray's empty wallet. Shawntray's Springfield XD 9mm handgun was also missing.

While investigating Shawntray's death, police interviewed Grant three times. Recordings of these interviews were admitted into evidence and played for the jury at trial. In the interviews, Grant denied seeing Shawntray the entire night on the boat, denied observing him win money, and denied any knowledge of how much he had won. Grant also denied being familiar with or ever communicating with her co-defendant, Osha Dunham, before or after the shooting.

However, some of Grant's statements in her interviews with police were contradicted by cell phone evidence that was introduced at trial. In particular, Grant's and Dunham's cell phone records showed that Grant communicated with Dunham multiple times before and immediately following the shooting, including when

Grant and Shawntray were on the boat, though this information had been erased from Grant's phone.[3] Dunham's cell phone records also showed that he spoke with Grant shortly before the shooting and was in the vicinity of Shawntray's apartment soon after Shawntray dropped off Grant and Street at Street's home. Shortly after the shooting, Dunham changed his cell phone number.

When responding to the scene of another crime in which Dunham had been shot in the arm, police officers collected a gun that a suspect had discarded.[4] The gun was determined to be Shawntray's firearm, which had been listed as stolen during his homicide. The firearm tested positive for Dunham's DNA, and Dunham's phone showed that, on July 25, 2018 — ten days after Shawntray was killed — Dunham had conducted a Google search on a "Springfield XD nine millimeter 30 round magazine."

---

[3] The content of the communications between Grant and Dunham was not admitted into evidence.

[4] Shell casings from Shawntray's gun were found at locations for multiple other shootings. Dunham was ultimately arrested for Shawntray's murder and other crimes associated with the unrelated shootings, and he was found guilty of those other crimes at trial. Grant was not charged with any involvement in these additional crimes, which occurred after and were unrelated to Shawntray's murder.

Investigators also uncovered a photograph taken the day Shawntray was murdered of Dunham holding a large sum of cash. At trial, the three people who accompanied Grant and Shawntray on the gambling boat all denied knowing Dunham.

2. Grant contends that the evidence presented at trial was insufficient both as a matter of federal constitutional due process and under Georgia statutory law to support her conviction for felony murder. We address these arguments in turn.

(a) In challenging the constitutional sufficiency of the evidence, Grant argues that the State failed to prove she was a party to the crimes and that the evidence at trial showed only her mere association with Dunham, the person directly responsible for Shawntray's death. Grant also complains that the State failed to present evidence of the content of her communications with Dunham or to show that she financially benefitted from Shawntray's death. We are not persuaded.

When we consider the sufficiency of the evidence as a matter of constitutional due process, we view the evidence in the light most

favorable to the jury's verdicts, and our review is limited to whether the evidence presented at trial was sufficient to authorize a rational jury to find the defendant guilty beyond a reasonable doubt of the crimes of which she was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). Where, as here, the defendant is charged as a party to the crime, conviction "requires proof that the defendant shared a common criminal intent with the direct perpetrators of the crimes." *Coates v. State*, 310 Ga. 94, 98 (849 SE2d 435) (2020) (citation and punctuation omitted). Of course, "mere presence at the scene of a crime is not sufficient evidence to convict one of being a party to a crime." *Frazier v. State*, 308 Ga. 450, 453 (2) (a) (841 SE2d 692) (2020) (citation and punctuation omitted). But "[a] jury may infer a common criminal intent from the defendant's presence, companionship, and conduct with other perpetrators before, during, and after the crimes." *Coates*, 310 Ga. at 98 (citation and punctuation omitted). Applying these principles, we conclude that the evidence presented at Grant's trial authorized the jury to find beyond a reasonable doubt that Grant

shared a common criminal intent with Dunham, who the jury was also authorized to conclude was the direct perpetrator of Shawntray's death.

Viewed in the light most favorable to the verdict, the evidence showed that Grant had knowledge of Shawntray's substantial winnings, communicated with Dunham several times on the night of the crimes both before and after Shawntray's murder, attempted to delete evidence of her communications with Dunham, and lied to officers about those communications. From this evidence, the jury could reasonably infer that Grant advised Dunham about Shawntray's winnings and whereabouts, hatched a plan with Dunham to rob Shawntray, and then attempted to conceal any evidence of her participation in the crimes. Moreover, the jury could infer that Grant's refusal to get out of the vehicle with the others at the scene of the crime was indicative of her involvement and her guilty conscience. Thus, the jury was authorized to find that Grant shared a common criminal intent with Dunham, at least to commit the crime of armed robbery, and that she therefore shared

responsibility for Shawntray's death that occurred in the course of that crime. See *Frazier*, 308 Ga. at 453-454 (2) (b) (evidence of appellant's actions before and after the crimes, including communicating with the direct perpetrators and lying to investigators, supported jury's finding that appellant was a party to the crimes rather than an innocent bystander); *Fitts v. State*, 312 Ga. 134, 142-143 (3) (859 SE2d 79) (2021) (evidence of appellant's knowledge and actions before, during, and after the crimes "was sufficient to show that [appellant] intentionally participated in the criminal plan and was thus sufficient to sustain her convictions"); *Kim v. State*, 309 Ga. 612, 617 (1) (847 SE2d 546) (2020) (noting that the finder of fact "could reasonably infer that [appellant] lied to the police because he shared a common criminal intent with his associate and that the two acted in concert in committing the crimes"). See also OCGA § 16-2-20 (b) (4) ("A person is concerned in the commission of a crime only if he . . . [i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime.").

As to Grant's complaints about the absence of certain evidence at trial — specifically, evidence showing the content of her communications with Dunham and any financial motive for her participation in the crimes — the fact that the State did not produce certain types of evidence does not mean that the evidence was insufficient. Indeed, it is well settled that the State is required "to prove its case with competent evidence," and "there is no requirement that it prove its case with any particular sort of evidence." *Plez v. State*, 300 Ga. 505, 506 (1) (796 SE2d 704) (2017). Accordingly, this claim fails.

(b) Grant also challenges the sufficiency of the evidence to support her conviction as a matter of Georgia statutory law, arguing that the State's case was based on circumstantial evidence and failed to exclude every reasonable hypothesis other than her guilt. Specifically, Grant argues that the State failed to exclude the "plausible explanation" that Grant "innocently" conveyed information about Shawntray's winnings and whereabouts to Dunham and later "declined to reveal the communications" out of

fear "that she might be implicated." Again, we disagree.

"When a conviction is based on circumstantial evidence, the State must present sufficient evidence to 'exclude every other reasonable hypothesis save that of the guilt of the accused.'" *Weems v. State*, 318 Ga. 98, 101 (2) (a) (897 SE2d 368) (2024) (quoting OCGA § 24-14-6). Of course, "not every hypothesis is a reasonable one, and the evidence need not exclude every *conceivable* inference or hypothesis — only those that are reasonable." *Graves v. State*, 306 Ga. 485, 487 (1) (831 SE2d 747) (2019) (citation and punctuation omitted; emphasis in original). Whether alternative hypotheses are reasonable "is usually a question for the jury, and this Court will not disturb the jury's finding unless it is insufficient as a matter of law." *Frazier*, 308 Ga. at 453 (2) (a). When assessing whether the prosecution excluded every reasonable hypothesis, "we ask whether the jury was entitled to discredit alternative theories that could have explained the circumstantial evidence and to believe the State's theory of the case instead." *Fitts*, 312 Ga. at 142 (3). And we bear in mind that when considering circumstantial evidence, jurors are

entitled to draw reasonable inferences "based on their own common-sense understanding of the world that are ordinarily drawn by ordinary people in the light of their experience in everyday life." Id. (citation and punctuation omitted). The evidence in this case meets this standard.

Here, the evidence showed that Grant was the sole link between Shawntray and Dunham, as Shawntray's other companions on the night of the crimes testified that they did not know Dunham. And the State's evidence showed that Grant not only communicated with Dunham multiple times on the night of the crimes, beginning while the group was still aboard the gambling cruise and continuing until after Shawntray's murder. Further, one of those calls took place shortly after Shawntray dropped off Grant and Street at Street's house and headed home, and Dunham was shown to be near Shawntray's home at that time. The jury could infer from that evidence that Grant told Dunham that Shawntray was on his way home so that Dunham would be ready to rob Shawntray.

The evidence also showed that Grant concealed information

from police officers and, at times, affirmatively misled them. Although Grant asserts that she merely "declined to reveal the communications" with Dunham to police, the evidence at trial showed that she went beyond simply concealing the communications. Besides the deletion of her communications with Dunham from her phone, Grant told investigators that she did not observe Shawntray win money on the boat, that she had no knowledge of how much Shawntray won, and that she did not know and had never communicated with Dunham before or after the shooting — claims that were refuted by direct evidence at trial. Thus, the jury was authorized to reject as unreasonable the hypothesis that Grant "innocently" communicated information about Shawntray's winnings and whereabouts to Dunham and later made false statements to investigators out of fear. Instead, as we discussed above, the jury could have inferred that Grant was trying to conceal that she and Dunham had a motive to rob Shawntray and hatched a plan to do so. Accordingly, the evidence was sufficient as a matter of Georgia statutory law to support Grant's conviction, and

this claim likewise fails. See OCGA § 24-14-6. See also *McCoy v. State*, 315 Ga. 536, 542 (b) (883 SE2d 740) (2023) ("[W]here the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of the guilt of the accused, as [it] did here, we will not disturb that finding unless it is insupportable as a matter of law." (citation and punctuation omitted)).

*Judgment affirmed. All the Justices concur.*


Decided July 2, 2024.

Murder. Chatham Superior Court. Before Judge Karpf.

*Amanda J. Walker*, for appellant.

*Shalena Cook Jones, District Attorney, Meredith L. Layman, Richard S. Harrison, Lyle Burnham, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Clint C. Malcolm, Meghan H. Hill, Senior Assistant Attorneys General, Grace G. Griffith, Sarah J. Thomas, Assistant Attorneys General*, for appellee.