317 Ga. 57
FINAL COPY

S23A0518.  YOUNG v. THE STATE.

McMillian, Justice.

In May 2021, a jury found Tomarkus Mikhail Young guilty of felony murder and other charges in connection with the shooting death of Richard Anderson.[1] On appeal, Young asserts that the evidence was constitutionally insufficient to support his convictions; that the trial court erred in denying his motion to strike a potential juror; that he received ineffective assistance of counsel; and that cumulative errors require the grant of a new trial. For the reasons

---

[1] Anderson was killed on or about February 25, 2018. On February 4, 2019, a Wilkes County grand jury indicted Young for felony murder predicated on aggravated assault (Count 1), aggravated assault (Count 2), voluntary manslaughter (Count 3), and possession of a firearm during the commission of a felony (Count 4). At a trial held from May 3 to 7, 2021, a jury found Young guilty on Counts 1, 2, and 4 but not guilty on Count 3. On May 13, 2021, the trial court sentenced Young to serve life in prison with the possibility of parole on Count 1 and five years in prison on Count 4 to be served consecutively; Count 2 was merged with Count 1 for sentencing purposes. Young timely filed a motion for new trial, which was later amended through new counsel on October 19, 2022, and December 20, 2022. Following a hearing, the trial court denied the amended motion on December 29, 2022. Young timely appealed, and his case was docketed to the April 2023 term of this Court and submitted for a decision on the briefs.

that follow, we conclude these assertions lack merit and affirm.

Viewed in the light most favorable to the jury's verdict, the evidence at trial showed that on February 23, 2018, Anderson purchased a .40-caliber handgun, which he showed to several people gathered at a barbershop. When Young saw the handgun, he offered to purchase it. Anderson told him it was not for sale but that he had another gun he could sell. Two days later, a group of people were gathered outside at a local "bootlegger's" house in Wilkes County. Young shot dice and drank alcohol with his friends near the gated entrance to the house. At one point, Anderson pulled up in his car and approached the group, looking to purchase marijuana. Anderson also told the group that he had a handgun to sell. He showed them the handgun after demonstrating that it was not loaded. Anderson and Young then got into Anderson's car together, but after Young exited the vehicle followed by Anderson, Young, who was wearing a hoodie with a front pocket, pulled out a handgun from either his pocket or waistband area and shot and killed Anderson.

After Anderson's death, Young's friend, Kijuan Vance, agreed

2

to speak with GBI Special Agent Austin Bradshaw and stated that on the night of the shooting he was among the group of people gathered outside the bootlegger's house, where he saw Young sitting with Anderson in Anderson's car. Young then got out of the car and announced that he was taking Anderson's gun. Anderson followed after Young, and it appeared to Vance that Anderson, who was unarmed, was trying to get his gun back from Young. Young pulled something out of his pocket and pointed it at Anderson. Vance said he looked away because he "knew what was about to happen," heard a gunshot, and turned back to see Anderson on the ground. Everyone gathered there, including Vance, immediately ran or drove away after hearing the gunshot. When Vance mentioned to the agent that he and Young had spoken shortly before the shooting that evening, Agent Bradshaw asked Vance to take a photograph of his phone's call log. Vance agreed, and Agent Bradshaw was able to determine that Vance's phone had been in contact with someone saved as

"Thrax" several times during the evening of the shooting.[2]

Raiquan Davis, another of Young's friends who was present on the night of the shooting, testified that he saw Young shoot Anderson in the chest while Anderson was unarmed. It looked to him that Anderson was trying to get his gun back from Young, who was also holding his own gun. Davis admitted that he initially lied to GBI agents several times to protect Young but decided to testify because it was "the right f\*\*king thing to do." Terrance Zellars, who was dating Young's sister at the time, testified that the morning after the shooting, Young told him that he "went to the spot last night and sh\*\* went south" and "I'm not playing with anybody anymore, if they roll they're fixing to get it." Zellars saw that Young had a handgun with him at that time.

Officers who responded to the scene found Anderson lying on the street, deceased from an apparent gunshot wound. GBI Special

---

[2] At trial, Vance claimed that he had no memory of the shooting or of speaking with law enforcement officers about what he had witnessed. However, a recording of his interview with Agent Bradshaw was played for the jury.

Agent Carl Murray was called to assist with processing the crime scene and recovered a gold cell phone about 30 feet from Anderson's body. He also recovered an empty gun holster, an empty Kahr Firearms box, .40-caliber ammunition, and a black cell phone from inside Anderson's car. Although the gold cell phone was locked, officers were able to identify its number and link that phone number to Young. After Anderson's girlfriend shared Anderson's password, officers were able to unlock the black cell phone found in his car and identified Young's cell phone number in his contacts under the name "Trax."

Officers arrived at Young's residence the following morning. Young agreed to speak with officers after being advised of his rights under *Miranda,*[3] and a recording of this interview was played for the jury. Young admitted seeing Anderson at a barbershop a few days before, but denied talking about a gun and denied being at the bootlegger's house on the night of the shooting.

---

[3] See *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

During a search of Young's house, officers recovered a 9mm Glock pistol in a chair on the front porch, as well as a .380 Lorcin pistol and a box of .380-caliber full-metal jacket ammunition from the bedroom belonging to Young's mother. During a second search of Young's home, officers recovered a sweatshirt with a hoodie and a front pocket and sweatpants in Young's room that were similar to what a witness had described Young wearing on the night of the shooting.

The owner of a pawn shop in nearby Thomson, Georgia testified that he sold Anderson a Kahr CT .40-caliber handgun on February 23, 2018, and a Hi Point .45-caliber handgun on March 22, 2017. Neither gun was ever recovered. After testing, a GBI firearms examiner was only able to determine that the bullet recovered from Anderson's autopsy was a .380-caliber full-metal jacket bullet and that it was not consistent with having been fired from either gun recovered from Young's home. The medical examiner who performed the autopsy testified that Anderson died from a single gunshot wound to the right side of his chest. There was no evidence of

stippling, indicating that Anderson had been shot from a distance of greater than three feet.

1. Young contends that the evidence was insufficient as a matter of constitutional due process to support his convictions because the State's evidence was speculative and many of the witnesses admitted to lying to investigators.

When this Court evaluates the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (emphasis omitted). So viewed, we conclude that the evidence was constitutionally sufficient to support Young's convictions for felony murder and possession of a firearm during the commission of a felony.

Multiple witnesses testified that Young was at the scene on the night of the shooting. Several witnesses testified that Young had previously approached Anderson about purchasing his handgun and

7

that Anderson declined. One eyewitness told officers that Young pointed a weapon at Anderson, who appeared unarmed, immediately before he heard a gunshot and ran. A second eyewitness testified that he saw Young shoot Anderson. Young abandoned his cell phone at the scene, made incriminating statements the following morning, and lied to officers about being at the scene of the shooting.

Even though Young points to inconsistencies in the witnesses' testimony to argue that the evidence was insufficient, it is well established that any conflicts in the evidence were for the jury to resolve. See *McIntyre v. State*, 312 Ga. 531, 531 (1) (863 SE2d 166) (2021) ("This Court does not reweigh evidence or resolve conflicts in testimony; instead evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (citation and punctuation omitted)). Accordingly, this enumeration of error fails.[4]

---

[4] To the extent that Young argues that the trial court should have granted a new trial on the general grounds, see OCGA §§ 5-5-20 and 5-5-21,

2. Young also argues that the trial court should have excluded Juror No. 22, a potential juror who was employed at the Wilkes County jail, for cause. "Striking a juror for cause is a matter committed to the sound discretion of the trial court, and no error will be found absent a showing that the discretion was manifestly abused." *Stephens v. State*, 309 Ga. 447, 451 (2) (847 SE2d 139) (2020) (citation and punctuation omitted).

The record shows that during the first morning of voir dire, the entirety of which was not transcribed, the trial court questioned Juror No. 22, who responded that she worked in the Wilkes County jail, where Young had been housed waiting for trial, but that she was not a POST-certified officer with arrest powers. Young's counsel argued that "she's aware of my client's custody position" and some other charges in relation to a fight in the jail, which counsel thought "would be very prejudicial," meaning that she should be struck for

---

this argument "is not properly addressed to this Court as such a decision is one that is solely within the discretion of the trial court." *Lewis v. State*, 314 Ga. 654, 660 (2) n.5 (878 SE2d 467) (2022) (citation and punctuation omitted). And, as it is clear from the record that the trial court applied the correct standard, it did not abuse its discretion.

cause. The trial court explained that it would keep Juror No. 22 "in the panel for right now," but noted that if defense counsel found authority for his argument that she should be struck for cause, the court would address the argument again.

Although not transcribed, it appears that during the parties' subsequent jury selection at the end of the day, Young struck Juror No. 22 with one of his nine peremptory strikes. Then, after the jury had been chosen, but prior to the jury being impaneled, Young moved for a mistrial based on his having to use a peremptory strike on Juror No. 22. The trial court granted Young until the following morning to identify any relevant authority to support the motion for mistrial. The next morning, Young renewed his motion for mistrial and offered a 2003 Court of Appeals case holding that it was error to allow a jailer to serve as a juror.[5] After the State argued in response that this Court's holding in *Willis v. State*, 304 Ga. 686 (820

---

[5] See *Kier v. State*, 263 Ga. App. 347, 348-49 (1) (587 SE2d 841) (2003) (recognizing that corrections officers are not subject to automatic removal for cause but reversing conviction for including in the panel of potential jurors a jailer who was employed at the jail where the defendant was incarcerated), overruled in part by *Willis v. State*, 304 Ga. 686 (820 SE2d 640) (2018).

SE2d 640) (2018), changed the way for-cause challenges are analyzed and that Young cured any problem by using a peremptory strike to strike Juror No. 22, the trial court denied Young's motion.

The State now argues that, because Young did not obtain a ruling on his motion to strike Juror No. 22 before the jury was empaneled, this enumeration was not preserved for appellate review. See *Kennebrew v. State*, 304 Ga. 406, 408 n.2 (819 SE2d 37) (2018) ("[L]egal issues must be raised and ruled on below in order to be properly considered on appeal."). However, pretermitting whether this issue was preserved for ordinary appellate review and pretermitting whether the trial court erred in denying a challenge for cause, Young cannot show harm under our holding in *Willis*. In that case, we relied on the United States Supreme Court's holding that "peremptory challenges to prospective jurors are not of constitutional dimension" and are instead "one means to achieve the constitutionally required end of an impartial jury" to conclude that the erroneous denial of a motion to excuse a prospective juror is harmless where the juror is subsequently removed by the use of a

11

peremptory strike. *Willis*, 304 Ga. at 704 (11) (a) (citation and punctuation omitted). Thus, to prevail on a claim that a challenged juror should have been removed for cause, an appellant must show harm, which, in this context, requires an appellant to demonstrate that a challenged juror who served on the jury was unqualified. See *Jackson v. State*, 314 Ga. 751, 758 (2) (879 SE2d 410) (2022).

Here, it is undisputed that Juror No. 22 did not sit on the jury, and Young has made no argument that any of the jurors who ultimately served on the jury were ever challenged or were otherwise unqualified. Because Young obtained the relief that he requested with respect to Juror No. 22 not being seated on the jury he cannot demonstrate the requisite harm, and his claim fails. See *Stephens*, 309 Ga. at 451 (2) (An "erroneous [ruling on] a challenge for cause affords no ground of complaint if a competent and unbiased jury is finally selected." (citation and punctuation omitted)).

3. Young next argues that he received constitutionally ineffective assistance of counsel in several respects. We are not persuaded.

To succeed on a claim of ineffective assistance of counsel, Young must show both that his counsel's performance was deficient and that such deficiency prejudiced his defense. See *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To satisfy the deficiency prong, Young must demonstrate that his counsel "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Bacon v. State*, 316 Ga. 234, 239 (3) (887 SE2d 263) (2023) (citation and punctuation omitted). In doing so, Young must overcome "[a] strong presumption . . . that trial counsel's performance was reasonable and that counsel's decisions and choices at trial fell within the broad range of professional conduct as assessed from counsel's perspective at the time of trial and under the specific circumstances of the case." Id. (citation and punctuation omitted). To establish prejudice, Young "must prove that there is a reasonable probability that, but for his trial counsel's deficiency, the result of the trial would have been different." *Bates v. State*, 313 Ga. 57, 62 (2) (867 SE2d 140) (2022). In reviewing a trial court's ruling

13

on an ineffective assistance of counsel claim, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." *Fuller v. State*, 316 Ga. 127, 130 (2) (886 SE2d 798) (2023) (citation and punctuation omitted). If Young fails to satisfy either prong of the *Strickland* test, "this Court is not required to examine the other." *Bacon*, 316 Ga. at 240 (3).

(a) Young first asserts that trial counsel failed to properly prepare for or support his motion to strike Juror No. 22 for cause, which he claims would have been granted, thereby avoiding the use of a peremptory strike. However, as stated in Division 2, Young has not shown that any juror sworn to hear his case was not a legal and impartial juror. Therefore, pretermitting any deficiency in counsel's performance, Young cannot show that any prejudice resulted from his counsel's unsuccessful motion to strike. See *Williams v. State*, 305 Ga. 776, 780 (2) (b) (827 SE2d 849) (2019) (because nothing in the record shows that any juror who ultimately served was not a legal and impartial juror, appellant cannot show that any prejudice

14

resulted from counsel's failure to object to the State's motion to strike a prospective juror for cause).

(b) Young next argues that his trial counsel "seemed wholly unprepared for and unfamiliar with the Georgia Rules of Evidence and the Evidence Code in general" and that counsel also displayed "an argumentative and combative attitude toward witnesses and the Court which wholly prejudiced Young's case."

At the motion for new trial hearing, Young's trial counsel testified that he has been licensed to practice law in Georgia since 1974 and estimated that he has tried approximately 800 jury trials, most of them felony cases. In this case, in addition to reviewing the police reports, counsel spoke with Young, Young's brother, the owner of the house near the crime scene, and other witnesses who claimed to be present at the time of the shooting. Although he met with Young 15 to 20 times prior to trial, the conversations were "not productive," as Young never told him what happened on the night of the shooting. Counsel explained that, although his tactics and demeanor may seem "offensive" to some, it is "how I get not guilty

15

verdicts."

Young also testified at the motion for new trial hearing and admitted that counsel visited him "about ten times" and that counsel went over the witness statements and discovery with him. In denying the motion for new trial, the trial court found Young's testimony to be not credible and counsel's testimony to be credible. The trial court also found that trial counsel appeared to be well versed in the rules of evidence — as demonstrated by numerous successful objections — and the rules of professional conduct and that Young had failed to point to "any instances that could not reasonably be interpreted as either trial tactics or strategy."

Although Young argues on appeal that "[c]ountless times, [counsel] contradicted himself, spoke over witnesses, and drew the ire of both the Office of the District Attorney and of the Court," he provides no citations to the record and offers very little context to support these arguments. The only example Young offers with any detail is his counsel's cross-examination of Davis. Young argues that, had counsel been prepared, he would have provided a certified

copy of Davis's prior conviction. However, Young has presented no evidence that Davis had a prior conviction, and this Court cannot conclude that Young's trial counsel was deficient in failing to present evidence that has not been shown to even exist. See *Thorpe v. State*, 304 Ga. 266, 268 (2) (a) (818 SE2d 547) (2018) ("[Appellant] did not . . . introduce any of [witness's] alleged prior convictions into evidence at the motion for new trial hearing, and it was his burden to show deficient performance and prejudice through competent evidence, for a silent or ambiguous record is not sufficient to overcome the strong presumption of reasonable performance." (citation and punctuation omitted)). Thus, Young has failed to meet his burden of showing that his trial counsel performed deficiently in this regard, and his claim of ineffective assistance on this ground fails.

(c) Young next asserts that trial counsel failed to timely request that his motion to suppress cell phone evidence be placed on the trial court's calendar for a hearing. Young, however, provides no citation to the record in support of this claim, and it does not appear that a

particularized motion to suppress cell phone evidence was ever filed in this case. Because counsel cannot be deficient for failing to request a timely hearing on a non-existent motion, Young has "failed to show that counsel's performance was deficient in this respect, [and] has not carried his burden of demonstrating that his trial counsel was constitutionally ineffective." *Williams v. State*, 315 Ga. 797, 806 (2) (884 SE2d 877) (2023). Cf. *Allen v. State*, 348 Ga. App. 595, 602-03 (1) (c) (824 SE2d 50) (2019) ("[A]bsent an unequivocal request to represent himself, the trial court did not err in failing to conduct a *Faretta* hearing, and thus trial counsel was not deficient for failing to request such.").

We note further that on appeal, Young makes no specific argument to support why any cell phone evidence in this case was subject to suppression, so he fails to show that any such motion would have been successful even if filed. See *Roseboro v. State*, 308 Ga. 428, 435 (2) (a) (841 SE2d 706) (2020) ("[B]ecause [the appellant] has not made a showing that had a motion been filed, the evidence would have been suppressed, . . . trial counsel was not deficient.").

18

Indeed, the record shows that Young's cell phone, which was abandoned at the scene, was never searched by the police, and Young lacked standing to suppress evidence from Anderson's cell phone. See, e.g., *Stinski v. State*, 281 Ga. 783, 783-84 (1) (642 SE2d 1) (2007).

(d) Young also argues that his counsel was unable to hear and understand the trial proceedings and would "just lean on Young to interpret for him what was going on" because he was "confused" and "couldn't keep the details straight." Again, Young provides no citations to the record to support this assertion. The only example he offered at the motion for new trial hearing was: "Like when the DA was talking to the witnesses and stuff like that he would ask me, like, what they say, what she say, I mean, and stuff like that." In ruling on this claim, the trial court noted that Young's testimony at the motion for new trial hearing on this point was not credible; that Young admitted his counsel was "mentally clear" about the case and "knew everything"; and that trial counsel credibly denied suffering from any hearing loss or lack of clarity during the trial.

19

Young has failed to show that the trial court's factual and credibility findings in this regard were clearly erroneous. See *Davis v. State*, 306 Ga. 430, 432 (831 SE2d 804) (2019) ("The trial court was authorized to credit the testimony of the defendant's counsel, and its factual findings and credibility determinations will be accepted unless clearly erroneous." (citation and punctuation omitted)). Young has therefore "failed to defeat the strong presumption of counsel's reasonable professional assistance," *Jones v. State*, 296 Ga. 561, 567 (4) (769 SE2d 307) (2015), and thus has not met his burden of showing that his trial counsel was constitutionally deficient in this regard, so this ineffectiveness claim fails as well.

4. Young asserts that the cumulative effect of the errors and deficiencies in his case denied him a fundamentally fair trial. We reject this assertion.

"When considering the cumulative effect of presumed errors by trial counsel and the trial court, this Court considers collectively the prejudicial effect, if any, of trial court errors, along with the

20

prejudice caused by any deficient performance of counsel." *Huff v. State*, 315 Ga. 558, 568 (6) (883 SE2d 773) (2023) (citation and punctuation omitted). Even assuming that any error in seating Juror No. 22 is the kind of error that we can aggregate with evidentiary errors (which we have not identified here) or trial-counsel deficiencies (one of which we have presumed), Young has not provided any argument or otherwise "demonstrated a reasonable probability that, but for these [alleged] failures, the outcome of the proceeding would have been different." *Payne v. State*, 314 Ga. 322, 334 (4) (877 SE2d 202) (2022) (cumulative effect of a presumed clear error by the trial court not giving an accomplice corroboration charge, a presumed deficiency by trial counsel for not requesting that charge, and a presumed deficiency by trial counsel for not objecting to hearsay was insufficient to establish cumulative error); see also *State v. Lane*, 308 Ga. 10, 18 (1) (838 SE2d 808) (2020) ("[A] defendant who wishes to take advantage of the [cumulative error rule] should explain to the reviewing court just how he was prejudiced by the cumulative effect of multiple errors.").

*Judgment affirmed. All the Justices concur.*

Decided August 21, 2023.

Murder. Wilkes Superior Court. Before Judge Hammond.

*The Abt Law Firm, E. Jay Abt; The Hingerty Law Firm, Katie A. H. Borodin*, for appellant.

*William P. Doupé, District Attorney, Rindi L. Harbeson, Terry L. Lloyd, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.