**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: September 17, 2024

S24A0647.  JONES v. THE STATE.

ELLINGTON, Justice.

Christopher Lane Jones appeals his convictions for malice murder and concealing the death of another in connection with the shooting deaths of Steven James Ward and Kristian Bell.[1] Jones asserts on appeal that there was insufficient evidence to support his

---

[1] Ward and Bell went missing on or around January 20, 2019, and their bodies were located on or around February 9, 2019. On May 2, 2019, a Coffee County grand jury indicted Jones on one count of malice murder (Count 1) and one count of concealing the death of another (Count 3) in connection with Bell's death and one count of malice murder (Count 2) and one count of concealing the death of another (Count 4) in connection with Ward's death. Jones was tried before a jury in September 2021, and the jury found him guilty on all counts. The trial court sentenced Jones to life in prison without the possibility of parole on Count 1; life in prison without the possibility of parole on Count 2, to run consecutively to Count 1; ten years in prison on Count 3, to run consecutively to Count 2; and ten years in prison on Count 4, to run consecutively to Count 3. Jones's trial counsel filed a timely motion for new trial on September 28, 2021, and new counsel filed an "Amended Motion for New Trial and Reversal of Convictions" on December 19, 2023. Following a hearing, the trial court denied Jones's motion for new trial, as amended, on January 26, 2024. Jones filed a timely notice of appeal, and this case was docketed to the April 2024 term of this Court.

convictions and that he received ineffective assistance of counsel. We affirm for the reasons set forth below.

1. In January 2019, Jones was living in a house on Deep Woods Road in Nicholls, Georgia, with Sarah Spruce, Mikhaela Anderson, Ward, and Bell. After the residents received an eviction notice directing them to vacate the Deep Woods Road house by January 20, 2019, they began moving their belongings off the property. Dedrick Johnson and his friend Joseph Burch helped with the move because some of the residents of the house, including Jones, planned to move to Johnson's property.

Burch testified that one night, he and Johnson drove to Waycross to retrieve a trailer to haul larger items from the Deep Woods Road house, while Jones, Ward, and Bell remained behind at the house. Burch said that when he and Johnson returned to the house later that night, Jones took them around back and showed them Ward's and Bell's bodies. One body was under the back porch and the other was under the left side of the house. Jones told Burch and Johnson that he had killed Ward and Bell. Jones told them that

2

he first shot Ward in the stomach and then shot Bell after she came out of the house. Burch testified that he had previously seen Jones with a shotgun and that there also was a Taurus pistol at the Deep Woods Road house.

Jones then directed Burch and Johnson to move the bodies, and while Jones walked around nearby, Burch and Johnson cut off the victims' clothes, put them in a bag, and dug a hole. Burch testified that he did what Jones told him to do because he was concerned for his own safety; he said he "didn't believe that [he] would make it out." Burch and Johnson put Bell's body in the hole first, and Ward's body was placed on top after Jones pulled it out from under the house by the neck and dragged it over. Burch testified that Jones had to stomp on Ward's body to make it fit in the hole. Jones gave Burch and Johnson a shower curtain to put over the bodies, which they then covered with dirt. They put bricks over the area to make it look like a firepit and to hide the hole. The three men then finished packing up the trailer and went to Johnson's house. The next day Burch drove Jones back to the house to get more furniture, and

Jones directed Burch to first clean everything off the back porch, including blood and "brains," which he did.[2]

Other witnesses corroborated much of Burch's testimony. Anderson testified that Jones told her he shot and killed Ward and Bell and "slung" their bodies under the house until Johnson and Burch returned. Spruce likewise testified that Jones told her he killed Ward and Bell. Among other things, Jones told Spruce that he shot Bell in the head, that he shot Ward even though Ward begged for his life, and that he had to cut off Ward's head to fit him in the hole.[3] And a third witness, David Wade Reliford, who knew Jones only casually, testified that Jones told him he killed Ward and Bell and had to "clean their brains up" afterward.

When Bell's family reported Bell as missing and Ward could not be located, the Coffee County Sheriff's office opened a missing

---

[2] Burch was charged with two counts of concealing a death and given a plea offer to serve two and one-half years of incarceration, which he had completed at the time of trial, and to spend ten years on probation in exchange for his truthful testimony at Jones's trial. However, Burch did not have a plea deal in place when he first told investigators what had happened to Bell and Ward.

[3] No evidence was presented at trial showing that Ward's head had been removed from his body.

persons investigation. Police searched the Deep Woods Road property without locating the missing pair, but volunteer searchers led by Bell's father later found Ward's and Bell's bodies buried under a fire pit and covered with a shower curtain. Autopsies later showed that Ward's body had several gunshot wounds, including to his torso, and that Bell's body had two gunshot wounds, including one to the back of her head. Police also recovered a number of .40-caliber spent shell casings from the property, which were later matched to a .40-caliber Taurus pistol found inside Johnson's house. Burch testified, however, that, before the police conducted that search, he and Johnson had found the Taurus pistol in a shed where Jones stayed following the move. Burch and Johnson discovered the pistol after Jones vacated the premises.[4]

Jones testified in his own defense at trial and denied killing

---

[4] Jones was eventually located and arrested by U. S. Marshals in Oceanside, California. Jones was interviewed by Coffee County Sheriff's investigators while in California, after he signed a form waiving his rights. During that interview, Jones did not deny killing Ward and Bell and indicated that he was scared that if he told his side of the story, he would never see his son again. This interview was played for the jury.

Ward and Bell. He also denied telling Reliford that he had committed the murders. He said that he did not know that Bell and Ward were dead until he saw it on Facebook when he was in California. Nevertheless, on cross-examination, Jones admitted that he did not like Bell and had problems with Ward, because Ward lied and blamed Jones "for certain things."

2. Jones asserts that the State failed to present sufficient evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), to prove that Jones committed the crimes of which he was convicted.

> On appeal, a criminal defendant is no longer presumed innocent, and we review whether the evidence presented at trial, when viewed in the light most favorable to the jury's verdicts, enabled the jury to find the defendant guilty beyond a reasonable doubt of the crimes of which [he] was convicted.

*Fitts v. State*, 312 Ga. 134, 141 (3) (859 SE2d 79) (2021) (citing *Jackson*, 443 U.S. at 319 (III) (B)). "This limited review leaves to the jury the resolution of conflicts in the evidence, the weight of the evidence, the credibility of witnesses, and reasonable inferences to

6

be made from basic facts to ultimate facts." (Citation and punctuation omitted.) *Wilkerson v. State*, 317 Ga. 242, 245 (1) (892 SE2d 737) (2023).

Under Georgia law, "[a] person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." OCGA § 16-5-1 (a). And "[a] person who, by concealing the death of any other person, hinders a discovery of whether or not such person was unlawfully killed is guilty of a felony." OCGA § 16-10-31.

Jones contends the evidence was insufficient to support his convictions for these crimes because the State failed to present any physical evidence connecting Jones with either the Taurus firearm used in the murders or the shovels that the State contended were used to conceal Ward's and Bell's bodies. However, "the fact that the State did not produce certain types of evidence does not mean that the evidence was insufficient." *Grant v. State*, 319 Ga. 490, 494 (2) (a) (904 SE2d 338) (2024). "Although the State is required to prove its case with competent evidence, there is no requirement that it

7

prove its case with any particular sort of evidence." *Plez v. State*, 300 Ga. 505, 506 (1) (796 SE2d 704) (2017).

The evidence at trial showed that Johnson and Burch left Jones alone with Bell and Ward at the Deep Woods Road house one night in January 2019. When Johnson and Burch returned to the house hours later, Jones showed them Ward's and Bell's dead bodies and said that he had shot them. Three other witnesses testified that Jones later confessed to shooting and killing Ward and Bell. After the shooting, Jones confessed to Anderson that he had killed the pair, then "slung" the bodies under the house until Johnson and Burch returned. Shortly thereafter he confessed to Reliford that he had killed them and that he had "to clean their brains up," and Burch also testified to cleaning up brain matter at Jones's direction. After Jones fled to California, he told Spruce that he had killed Ward even though Ward begged for his life and that he shot Bell in the head. The autopsies showed that Ward's body had multiple gunshot wounds, including to his torso, and Bell's body had two gunshot wounds, including one to the back of her head.

Each confession was direct evidence of Jones's guilt, and we conclude that Jones's multiple confessions along with the other corroborating and supporting evidence at trial was more than sufficient to support his murder convictions. See *Baker v. State*, 319 Ga. 456, 460 (1) (902 SE2d 645) (2024) (defendant's confession corroborated by various evidence, including the circumstances under which the victims were discovered and evidence of defendant's consciousness of guilt was sufficient to support his murder conviction); *Thrift v. State*, 310 Ga. 499, 502 (1) (852 SE2d 560) (2020) (defendant's confessions to killing victim and disposing of victim's body, made to various witnesses, were direct evidence of guilt and those confessions, along with corroborating evidence, were sufficient to support his murder conviction).

Regarding the charges of concealing the death of another, the evidence showed that Jones told Johnson and Burch to dig a hole, and they put Ward's and Bell's bodies in it. The men then filled the hole with dirt and disguised the area to look like a firepit to conceal the bodies. Ward's and Bell's bodies were later found in the

9

makeshift firepit, under a shower curtain. And although Burch and Johnson helped to bury Ward's and Bell's bodies, the evidence was sufficient to convict Jones of being a party to the crime of concealing their deaths. Under OCGA § 16-2-20 (b) (3), a person is a party to a crime if he "[i]ntentionally aids or abets in the commission of the crime." The evidence showed that Jones led Burch and Johnson to the bodies; directed them to dispose of them; pulled Ward's body over to the hole and stomped on it to make it fit; and provided Johnson and Burch with the shower curtain to put over the bodies.[5] See *Nelms v. State*, 285 Ga. 718, 720 (1) (681 SE2d 141) (2009) (evidence sufficient to support both defendants' convictions for concealing a death where they both dragged body away from crime scene and

---

[5] Jones further asserts that the witnesses to his confessions were all "admitted liars" and notes that police found the Taurus pistol and the shovels they contend were used in the crime at Johnson's house, and Johnson was convicted of concealing Bell's and Ward's deaths. However, it was up to the jury to resolve any conflicts in the evidence and determine witness credibility. See *Wilson v. State*, __ Ga. __, __ (1) (2024 Ga. LEXIS 168, at *8 (Case No. S24A0526, Aug. 13, 2024) (jury is to determine witness credibility and to resolve any evidentiary conflicts and "[b]ecause the jury's findings were sufficiently supported by the evidence, we will not disturb those findings." (citation and punctuation omitted)).

10

covered it with leaves to hide it).

Accordingly, this enumeration fails.

3. Jones contends that he received ineffective assistance of trial counsel. Jones asserts, without further elaboration, that his trial counsel provided ineffective assistance of counsel "by, inter alia, spending inadequate time conferring with him and failing to confer effectively with him so as to allow Mr. Jones to meaningfully participate in his own defense; failing to meaningfully review the evidence with the Defendant prior to trial; failing to adequately cross-examine witnesses; failing to pursue and present exculpatory evidence by, inter alia, failing to call witnesses with relevant testimony favorable to the defense; and by failing to adequately prepare the Defendant's case for trial, in addition to other deficiencies that the evidence may show." He argues, generally, that "[b]ut for these deficiencies, trial counsel would have succeeded in raising reasonable doubt as to Mr. Jones's guilt, or otherwise affected or influenced the jury favorably toward Mr. Jones."

However, Jones made no attempt to carry the substantial

burden required of him under *Strickland v. Washington*, 466 U.S. 668, 687-695 (III) (104 SCt 2052, 80 LE2d 674) (1984), for establishing a claim of ineffective assistance of counsel. To prevail on a such claim, "a defendant generally must show that counsel's performance was deficient, and that the deficient performance resulted in prejudice to the defendant." *Perkins v. State*, 313 Ga. 885, 901 (5) (873 SE2d 185) (2022) (citing *Strickland*, 466 U.S. at 687-695). To meet the deficiency prong of the *Strickland* test, Jones was required to show "that trial counsel performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms." *Pauldo v. State*, 317 Ga. 433, 436 (1) (893 SE2d 633) (2023). "Establishing deficient performance is no easy showing, as the law recognizes a strong presumption that counsel performed reasonably, and [Jones bore] the burden of overcoming this presumption." (Citation omitted.) Id.

"To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different."

*Perkins*, 313 Ga. at 901 (5) (citing *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Citation and punctuation omitted.) *Sullivan v. State*, 308 Ga. 508, 510 (2) (84 SE2d 5) (2020). Therefore, a defendant's burden of establishing prejudice under *Strickland* "is a heavy one." *Young v. State*, 305 Ga. 92, 97 (5) (823 SE2d 774) (2019).

Here, although Jones makes generalized assertions of his trial counsel's alleged failings, he fails to show in what respect his counsel's performance was deficient. He provides no record citation, argument, or legal authority to support any claim of deficient performance. For example, he fails to explain how a reasonable probability existed that the outcome of his trial would have been different, or even how he could have participated more "meaningfully" in his trial, if his counsel had spent additional time conferring with him or more "meaningfully" reviewed the evidence with him before trial. Moreover, Jones identifies no instance where his trial counsel failed to adequately cross-examine any witness nor

does he show any exculpatory evidence his counsel failed to pursue or present through witness testimony or otherwise, as he proffered no such omitted evidence at the hearing on his motion for new trial. And without establishing deficient performance by counsel, Jones cannot show any prejudice resulting from such performance. Accordingly, Jones failed to establish his claims of ineffective assistance of counsel. See, e.g., *Pauldo*, 317 Ga. at 437 (1) (a). ("It is well established that a defendant fails to establish prejudice under *Strickland* when he merely contends that trial counsel was deficient for failing to present [witness testimony], without also presenting evidence at the motion-for-new-trial hearing about what the [witness] would have testified to at trial."); *Young v. State*, 317 Ga. 57, 64 (3) (b) (891 SE2d 827) (2023) (where defendant provided no citation to the record in support of his claims of trial counsel's inadequate preparation and trial performance, including during counsel's examination of witnesses, he failed to meet his burden of showing deficient performance); *Allen v. State*, 317 Ga. 1, 11 (4) (b) (890 SE2d 700) (2023) (To make the required affirmative showing of

14

the prejudicial effect of trial counsel's failure to call a witness, "[e]ither the uncalled witness must testify or the defendant must introduce a legally recognized substitute for the uncalled witness's testimony." (citation and punctuation omitted)); *Payne v. State*, 314 Ga. 322, 334 (3) (g) (877 SE2d 202) (2022) (holding counsel was not deficient where appellant "offer[ed] no evidence in support of this claim other than suggesting that additional investigation could have led to exculpatory evidence").

Finally, Jones asserts that we should consider the cumulative effect of his counsel's alleged deficiencies and grant him a new trial. See *Pritchett v. State*, 314 Ga. 767, 787 (4) (879 SE2d 436) (2022). As we determined above, although Jones attempted to assert multiple claims of ineffective assistance of counsel, he failed to carry his burden of showing deficient performance by his trial counsel in any respect. Accordingly, Jones cannot show cumulative prejudice in this case sufficient to warrant a new trial. See *Scott v. State*, 309 Ga. 764, 771 (3) (d) (848 SE2d 448) (2020) ("Assessing cumulative prejudice is necessary only when multiple errors have been

shown.").

*Judgment affirmed. All the Justices concur.*